J-S22032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TRACEY PHILLIPS, AND ANITA AND ADOLPH SCHOCK | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | |
| | : | No. 349 WDA 2024 |
| MARK DELSIGNORE AND HEIDI DELSIGNORE | : : | |

Appeal from the Order Entered February 16, 2024
In the Court of Common Pleas of Washington County
Civil Division at 2023-7029

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:            **FILED: August 20, 2024**

Appellants, Tracey Phillips, and Anita and Adolph Schock, appeal from the trial court's February 16, 2024 order, which dismissed Appellants' custody complaint after Appellees, Mark Delsignore and Heidi Delsignore, filed preliminary objections challenging Appellants' standing.  We affirm.

On November 28, 2023, Appellants filed a complaint requesting partial physical custody of J.D. ("Child"), born in February of 2012.  **See** Complaint, 11/28/23, at ¶ 3.[1]  They alleged that Ms. Phillips is the mother of Child's biological father and the paternal grandmother of Child, and that Mr. and Mrs. Schock are the grandparents of Child's biological father and Child's paternal great-grandparents.  **See id.** at ¶¶ 1, 4, 9, 14.  Appellants stated that the

_____

[1] **See generally** Child Custody Act, 23 Pa.C.S. §§ 5321-5340.

Delsignores are Child's adoptive parents and paternal cousins. *Id.* at ¶¶ 2, 14. According to Appellants, Child's biological parents had their parental rights terminated, and the Delsignores adopted Child in 2015. *Id.* at ¶ 14. Subsequently, in 2016, Appellants said Child's biological father passed away. *Id.* Appellants claimed that, prior and subsequent to Child's adoption, the Delsignores indicated that Appellants would have "liberal contact" with Child and be able to enjoy time with him. *Id.* Until 2022, Appellants averred that they had contact with Child and spent time with him. *Id.* However, they said that a controversy took place between the parties at some point and the "visitations became very sparse until such time as no visitation or contact with [C]hild [was] allowed." *Id.*

With respect to standing, Appellants' complaint specifically set forth the following:

> 16. (a) If the plaintiff is a grandparent or who is not loco parentis to the child and is seeking physical and/or legal custody pursuant to 23 Pa.C.S. §5323, you must plead facts establishing standing pursuant to 23 Pa.C.S. §5324(3).
>
> Plaintiffs are not in loco parentis, however, have standing as the biological Father of the child, had passed away and he was the biological son Plaintiff, Tracey Phillips.
>
> (b) If the plaintiff is a grandparent or great-grandparent who is seeking partial physical custody or supervised physical custody pursuant to 23 Pa.C.S. § 5325, you must plead facts establishing standing pursuant to §5325.
>
> Plaintiff has standing under to 23 Pa.C.S. §5325 as stated above.

*Id.* at ¶ 16 (verbatim). The complaint also contained notice that the Delsignores were ordered to appear on January 23, 2024, for a pre-custody conciliation with a child custody conference officer.

On January 2, 2024, Appellants filed a notice of service of their complaint. They stated that, on November 28, 2023, they served the complaint on the Delsignores at their confirmed address via both certified and United States Postal Service ("USPS") regular mail. Notice, 1/2/24, at 2 (unnumbered). Appellants stated that the certified mail was "not picked up" and returned to the sender, but as of December 29, 2023, the regular mail had not been returned. *Id. See also id.* at Exhibit A (USPS Tracking Information for the Certified Mail) (showing the certified mail was "Unclaimed/Being Returned to Sender").

On January 17, 2024, the Delsignores filed preliminary objections, arguing that Appellants lacked standing. *See* Delsignores' Preliminary Objections, 1/17/24, at 4-5 (asserting that Appellants lacked standing under Sections 5324-5326 of the Child Custody Act). The Delsignores presented their preliminary objections in motions court on January 24, 2024. At that time, the trial court allowed Appellants to file a response and "submit additional support to the standing challenge." *See* Trial Court Opinion ("TCO"), 4/5/24, at 2.[2]

---

[2] While not clear from the docket, Appellants indicate that the January 23, 2024 conciliation was cancelled. *See* Pa.R.A.P. 1925(b) Statement, 3/13/24, at ¶ 3.

On February 9, 2024, Appellants filed a brief in response to the preliminary objections. They acknowledged that, on July 1, 2015, Child's biological mother's parental rights were terminated. Response, 2/9/24, at 2 (unnumbered). They stated that Child's biological father's parental rights were voluntarily terminated on that same day and that, on August 16, 2016, he died. *Id.* They noted that, on August 18, 2015, the Delsignores adopted Child. *Id.* Nevertheless, Appellants maintained that — at the time the biological father agreed to relinquish his parental rights — he entered into an oral agreement with the Delsignores that they would continue to allow Child to visit with Appellants. *See id.* at 2-3 (unnumbered); *see also id.* at 4 (stating that Child's biological father's "relinquishment of parental rights was contingent upon the filing of a visitation agreement and approval by the court") (unnumbered). Appellants admitted, though, that no formalized agreement was entered. *Id.* at 3-4 (unnumbered). Appellants claimed that biological father's "consent to terminating his parental rights was not intelligent, voluntary, and deliberate, given that he believed he was agreeing to the termination with conditions; and yet those critical conditions are no longer being fulfilled." *Id.* at 5 (unnumbered).

Thereafter, the trial court entered an order, determining that Appellants do not have standing to pursue physical and/or legal custody of Child and dismissing their complaint. Appellants filed a timely notice of appeal along with a concise statement of errors complained of on appeal. The trial court then issued a Pa.R.A.P. 1925(a) opinion.

Appellants raise the following issues for our review:

1. Did the trial court commit an abuse of discretion and error of law by granting the [Delsignores'] preliminary objections as to standing?

2. Did the trial court erroneously allow the late filing of [the Delsignores'] preliminary objections?

3. Did the trial court erroneously rule on the preliminary objections without first affording Appellants a hearing and the opportunity to present supporting evidence?

Appellants' Brief at 7.

## First Issue

In Appellants' first issue, they claim that the trial court abused its discretion and erred by granting the Delsignores' preliminary objections based on standing. *Id.* at 11. "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *M.S. v. J.D.*, 215 A.3d 595, 598 (Pa. Super. 2019) (citation omitted). Generally,

[s]tanding relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant be adversely affected, or aggrieved, in some way. Traditionally, this requirement is met where an individual demonstrates he or she has a substantial interest in the subject matter of the litigation that must be direct and immediate, rather than remote, and which distinguishes his interest from the common interest of other citizens. In Pennsylvania, the doctrine of standing is a judicially-created tool intended to winnow out litigants with no direct interest in the matter, and to otherwise protect against improper parties. Consequently, where the General Assembly expressly prescribes the parties who may pursue a particular course of action in Pennsylvania courts, legislative enactments may further enlarge or distill these judicially-applied principles. Standing is a

- 5 -

threshold issue and must be resolved before proceeding to the merits of the underlying action.

***Interest of K.N.L.***, 284 A.3d 121, 136-37 (Pa. 2022) (cleaned up). ***See also id.*** at 138 ("Where a statute prescribes the parties to an action, those individuals have standing in the action….") (citations omitted).

Sections 5324 and 5325 of the Child Custody Act specifically list the individuals who may file an action for custody, which "demonstrate[s] the legislature's intent to include a narrow scope of litigants in these, typically private, family disputes." ***Id.*** (citations omitted). ***See also M.S.***, 215 A.3d at 598 ("In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.") (citation omitted).

Here, Appellants claim they have standing under Section 5324(3), which provides:

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

***

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

- 6 -

(iii) when one of the following conditions is met:

    (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

    (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

    (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324(3).

In support, Appellants first claim that they are Child's paternal grandparents. Appellants' Brief at 13.[3] Second, they say that their relationship with Child began either with the consent of a parent of Child or under a court order, as they have been "integrally involved with … Child's life since birth[,]" and Child's biological father "not only consented to … Appellants' care for [C]hild but conditioned [C]hild's adoption to the Delsignores on … Appellants' continuing involvement in [C]hild's life." *Id.* Third, they advance that they have assumed responsibility for Child, as they have provided Child with a home, assisted him with his homework, and ensured that Child had appropriate social and cultural interactions. *Id.* Fourth, they assert that Child was substantially at risk due to parental abuse, neglect, drug or alcohol abuse

---

[3] **But see** Appellants' Brief at 8 (stating that the Schocks are Child's "paternal great-grandparents").

or incapacity, as demonstrated by biological mother's frequent moves, lack of a permanent residence, educational neglect, involvement with a drug-using boyfriend, and residing with Child in a car. *Id.* at 14. As such, they conclude they have satisfied Section 5324(3). *Id.*[4]

Appellants did not raise this specific Section 5324(3) argument below. *See* Pa.R.A.P. 302(a), *supra*.[5] Nevertheless, even if not waived, Appellants' argument that they have standing under Section 5324(3) is meritless.

_____

[4] Appellants do not argue that they established standing pursuant to Section 5325. *See* 23 Pa.C.S. § 5325 (pertaining to standing for partial physical custody and supervised physical custody). As such, we do not address Section 5325. In addition, to the extent Appellants vaguely imply that they stand in loco parentis to Child, we deem that claim waived for both failure to raise it below and lack of development on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Complaint at ¶ 14 (alleging that "[f]rom 2012 through 2022, [Appellants] had continued contact with [C]hild. They had overnight visits, park days, and various activities and outings with [C]hild. At some point, a controversy took place between [*sic*] the [Delsignores], **who [Appellants] recognize as the parents of [C]hild** since the adoption…") (emphasis added); *id.* at ¶ 16 (conceding Appellants "are **not** in loco parentis") (emphasis added); TCO at 3 (recognizing that Appellants "concede that they are not parents or persons standing in loco parentis to [C]hild"); *see also* ***Kaur v. Singh***, 259 A.3d 505, 511 (Pa. Super. 2021) ("When an appellant fails to properly raise and develop issues in briefs with arguments that are sufficiently developed for our review, we may dismiss the appeal or find certain issues waived. It is not this Court's role to develop an appellant's argument where the brief provides mere cursory legal discussion.") (citations omitted).

[5] ***See also*** TCO at 4 (noting that Appellants' complaint failed to set forth any of Section 5324(3)'s requirements, and that "when this [c]ourt gave [Appellants] an opportunity to expand on legal arguments supporting their claim of standing through brief, [Appellants] failed to address standing but rather advanced a separate and distinct argument challenging the propriety of the adoption finalized in 2015") (footnote omitted).

To begin, any rights Appellants may have had to seek custody of Child under Section 5324 were terminated upon his adoption by the Delsignores. *See* Appellants' Brief at 8 (acknowledging the Delsignores adopted Child in 2015). Section 5326 of the Child Custody Act specifically addresses the effect of adoption on the custody rights of grandparents and great-grandparents, and makes clear that Appellants have no standing in this matter. Section 5326 provides:

> Any rights to seek physical custody or legal custody rights and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent prior to the adoption of the child by an individual other than a stepparent, grandparent or great-grandparent shall be **automatically terminated upon such adoption.**

23 Pa.C.S. § 5326 (emphasis added). Appellants have admitted that the Delsignores are not Child's stepparents, grandparents, or great-grandparents. *See* Complaint at ¶ 2 (identifying the Delsignores as paternal cousins). As a result, under Section 5326, Appellants lost any right to seek custody of Child upon Child's adoption by the Delsignores.

Notwithstanding Section 5326, Appellants also improperly rely on circumstances that existed **prior to** Child's adoption in 2015 to argue standing under Section 5324(3). For instance, they assert that they are Child's grandparents, that Child's biological father consented to Appellants' relationship with Child, and that Child's biological mother's behavior put Child at substantial risk. However, Appellants' argument ignores the fact that Child

was adopted. ***In re Adoption of R.J.S.***, 889 A.2d 92, 100 n.7 (Pa. Super. 2005) ("A decree of adoption terminates forever all relations between a child and his biological parents and severs the child entirely from its own family tree and engrafts it upon its new parentage.") (citation omitted); ***see also E.A. v. E.C.***, 259 A.3d 497, 504 (Pa. Super. 2021) ("[W]e examine whether standing is present in light of the factual circumstances as they **currently** exist.") (emphasis added). As the Delsignores observe, Appellants are no longer Child's grandparents and great-grandparents, and they cannot "pursue a custody action against the adoptive parents by claiming that … years earlier, they had custodial rights due to the biological parents['] actions and non-actions." Delsignores' Brief at 7. Thus, even if properly raised below, Appellants' present Section 5324(3) argument would fail.

In addition to Appellants' Section 5324(3) argument, Appellants claim that the Delsignores are equitably estopped from denying them visitation because Child's biological father "agreed to the adoption" based on the understanding that his family would have continuing contact with Child. ***See*** Appellants' Brief at 15; ***see also id.*** at 16-18. We fail to see how this argument is relevant to the question of standing before us. Appellants do not provide an explanation. ***See Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.") (citations omitted).

- 10 -

Appellants filed a custody complaint. As set forth above, the Child Custody Act confers standing on grandparents and great-grandparents to seek custody if certain requirements are met. **See** 23 Pa.C.S. §§ 5324-5325. Appellants have not demonstrated that they satisfy these statutory requirements and, consequently, they cannot pursue custody of Child. ***Interest of K.N.L.***, 284 A.3d at 137 (stating that "[s]tanding is a threshold issue") (citation omitted). Any arguments relating to a purported oral agreement between Child's biological father and the Delsignores have "nothing to do with and fail[] to resurrect standing in the present matter." TCO at 6.[6] Thus, the trial court did not err or abuse its discretion in granting the Delsignores' preliminary objections based on standing.

---

[6] We point out that there are specific rules for creating a post-adoption contact agreement. The Adoption Act, 23 Pa.C.S. §§ 2101-2938, allows adoptive parents and birth relatives to enter into a voluntary agreement for ongoing contact. Section 2731 provides:

> The purpose of this subchapter is to provide an option for adoptive parents and birth relatives to enter into a voluntary agreement for ongoing communication or contact that:
>
> (1) is in the best interest of the child;
>
> (2) recognizes the parties' interests and desires for ongoing communication or contact;
>
> (3) is appropriate given the role of the parties in the child's life; and
>
> (4) is subject to approval by the courts.

23 Pa.C.S. § 2731. Section 2735 requires that the agreement be filed with the court that finalizes the adoption of the child; sets forth conditions for approval; and states that "[a]n agreement shall not be legally enforceable
*(Footnote Continued Next Page)*

unless approved by the court." 23 Pa.C.S. § 2735. Among other things, Section 2738(c) provides that, for an agreement to be enforceable, it must be in writing and "approved by the court on or before the date for any adoption decree." 23 Pa.C.S § 2738(c). Other specific rules govern how a post-adoption contact agreement may be enforced, including that an enforcement action should be filed in the court that finalized the adoption and that Section 2738 constitutes the exclusive remedy for enforcement of an agreement. *See generally* 23 Pa.C.S § 2738. Here, Appellants concede that no agreement consistent with the Adoption Act's requirements was entered. *See* Appellants' Brief at 16 (acknowledging that there was "no judicial imprimatur of an agreement in this case").

Further, to the extent Appellants suggest that Child's biological father conditioned the termination of his parental rights and Child's adoption on Child's having continued visitation with Appellants, this Court has "recognized that the [Adoption] Act does not include a provision that permits a parent to condition his or her relinquishment on the adoptive parent allowing continuing contact." *See In re Adoption of A.W.*, 230 A.3d 1139, 1145 (Pa. Super. 2020) (citing *In re C.M.C.*, 140 A.3d 699, 711-12 (Pa. Super. 2016)). In cases where parents condition the voluntary relinquishment of their parental rights on the entry of a post-adoption contact agreement, this Court has determined that the parents did not "intelligently, voluntarily, and deliberately" consent to the termination. *See id.*; *see also In re C.M.C.*, 140 A.3d at 711. In the case *sub judice*, however, there is no indication that Child's biological father appealed or otherwise challenged the termination of his parental rights, complaining that his consent was not intelligent, voluntary, and deliberate because he conditioned his relinquishment on the Delsignores' agreeing to a post-adoption contact agreement. *Cf. In re Adoption of A.W.*, 230 A.3d at 1140, 1143 (explaining that the mother appealed from the decrees involuntarily terminating her parental rights, and argued that the orphans' court erred by determining that she did not enter a voluntary relinquishment); *In re C.M.C.*, 140 A.3d at 701, 703-04 (stating that mother appealed from the decree voluntarily terminating her parental rights, and raised the question: "Where a verbal relinquishment of parental rights was conditioned upon the entry of a post[-]adoption contact agreement, was it knowing and voluntary and was it a violation of the statute?"). Moreover, Appellants set forth no authority demonstrating that they are permitted to challenge the termination of biological father's parental rights in a custody action and at this juncture, nearly a decade after the termination occurred, the adoption was finalized, and Child's biological father passed away. *See Com. v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008) ("When an appellant

*(Footnote Continued Next Page)*

**Second Issue**

In Appellants' second issue, they complain that the trial court permitted the Delsignores to file their preliminary objections late. Appellants' Brief at 19. They say that they filed their custody complaint on November 28, 2023, and the Delsignores did not file their preliminary objections until January 17, 2024, in violation of Pennsylvania Rule of Civil Procedure 1026(a). *See* Pa.R.Civ.P. 1026(a) (generally providing that "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading, but no pleading need be filed unless the preceding pleading contains a notice to defend or is endorsed with a notice to plead"); *see also* Appellants' Brief at 20 ("Because the complaint was filed on November 28, 2023, the preliminary objections were due by December 16, 2023, but [the Delsignores] did not do so until January 17, 2024."). Appellants thus claim that the trial court should have denied the Delsignores' preliminary objections with prejudice.

This claim is waived. To begin with, the record does not indicate that Appellants raised this issue below. *See* Pa.R.A.P. 302(a), *supra*. Further, Appellants did not clearly raise this claim in their Rule 1925(b) statement, and the trial court did not address this claim in its Rule 1925(a) opinion. *See* Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error

_____

fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. … It is not the job of this Court to clarify or support [the a]ppellant's arguments.") (citation omitted).

- 13 -

that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *see also* Pa.R.A.P. 1925(b) Statement at ¶ 3 (only stating with respect to the timing of the Delsignores' preliminary objections that, "The [c]ourt allowed the late filing of [p]reliminary [o]bjections, and the custody conference on January 23, 2024, was cancelled and [p]reliminary [o]bjections were heard the next day.  Whereby, counsel requested the opportunity to file a brief and make argument.  The [c]ourt allowed time for counsel to file its brief").[7]

In addition to the above-stated reasons, Appellants' argument is also waived for lack of development.  At the outset, to the extent Appellants contend Rule 1026(a) required the Delsignores to file their preliminary objections before January 17, 2024, Appellants do not first establish that service of the complaint on the Delsignores was completed, when such service was completed, and that the complaint contained a sufficient notice to defend. *See* Pa.R.Civ.P. 1026(a) ("[E]very pleading subsequent to the complaint shall be filed within twenty days **after service of the preceding pleading**, but no pleading need be filed **unless the preceding pleading contains a notice to defend** or is endorsed with a notice to plead.") (emphasis added); *Note* to

---

[7] Even if Appellants had raised this issue clearly in their Rule 1925(b) statement, "the Rule 1925(b) statement cannot be used to raise a claim for the first time on appeal." *In re. B.C.*, 36 A.3d 601, 605 (Pa. Super. 2012) (citation omitted).

Pa.R.Civ.P. 1026(a) (stating that "[f]or the form notice to defend see Rule 1018.1"); *see also* Pa.R.Civ.P. 1018.1(b) (indicating that the notice to defend should warn, "If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you"); Pa.R.Civ.P. 1930.4 (addressing service of original process in domestic relations matters).

More significantly, though, Appellant's argument ignores that there are specific rules that govern practice and procedure in custody cases. *See* Pa.R.Civ.P. 1915.1 ("These rules govern the practice and procedure in all actions for legal and physical custody of minor children…."). Rule 1915.5 — which was amended in 2020 — addresses the filing of preliminary objections in custody actions and provides:

> **(a) Question of Jurisdiction, Venue, or Standing.**
>
> (1) A party shall raise jurisdiction of the person or venue by preliminary objection.
>
> (2) A party may raise standing by preliminary objection or at a custody hearing or trial.
>
> (3) The court may raise standing *sua sponte*.
>
> (4) In a third-party plaintiff custody action in which standing has not been resolved by preliminary objection, the court shall address the third-party plaintiff's standing and include its standing decision in a written opinion or order.
>
> **(b)** A party may file a counterclaim asserting the right of physical or legal custody within 20 days of service of the complaint upon that party or at the time of hearing, whichever first occurs. The

- 15 -

claim shall be in the same form as a complaint as required by [Rule] 1915.3.

**(c)** There shall be no discovery unless authorized by special order of court.

**(d)** Except as set forth in subdivisions (a) and (b), a responsive pleading shall not be required. If a party files a responsive pleading, it shall not delay a hearing or trial.

Pa.R.Civ.P. 1915.5.[8] Appellants do not address Rule 1915.5 — which does not explicitly require preliminary objections to be filed within twenty days of service of the pleading to which objection is made — and fail to explain how the trial court erred in applying it.

"When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) (citations omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citation omitted). "[M]ere issue spotting without sufficient analysis or legal support precludes appellate review." ***Commonwealth v. Armolt***, 294 A.3d 364, 379 (Pa. 2023) (citation omitted). Because Appellants' claim that the trial court

---

[8] ***Cf.*** Pa.R.Civ.P. 1915.5(a) (prior version effective until Sept. 30, 2020) ("A party must raise any question of jurisdiction of the person or venue, and may raise any question of standing, by preliminary objection filed within twenty days of service of the pleading to which objection is made or at the time of hearing, whichever first occurs. No other pleading shall be required, but if one is filed it shall not delay the hearing.").

erred in allowing the Delsignores' preliminary objections lacks support and consideration of relevant authority, we find waiver on this basis too.

### Third Issue

In Appellants' third issue, they claim that "[t]he trial court erroneously ruled on the preliminary objections without first affording Appellants a hearing and the opportunity to present supporting evidence[.]" Appellants' Brief at 20 (emphasis omitted). They suggest that they have raised issues of fact and that, "if they had been provided a hearing, they would have been able to offer evidence to show the agreement that the biological father made with the Delsignores, demonstrating that his acceding to the adoption was continent [*sic*] on their permitting [C]hild's paternal family to continue to have a relationship with him." *Id.* at 21.

No relief is due. As the trial court recognized, "by the very [c]omplaint and pleadings filed on their behalf, [Appellants] are unable to assert standing in the present matter." TCO at 4. In other words, Appellants have not alleged facts that would establish standing in this custody action even if proven true. Thus, there are no questions of fact to warrant an evidentiary hearing in this case. *See Raymond v. Raymond*, 279 A.3d 620, 627 (Pa. Super. 2022) ("When no issues of fact are raised, the court shall dispose of the preliminary objections as a matter of law on the basis of the pleadings alone.") (citations omitted); *cf. C.G. v. J.H.*, 172 A.3d 43, 54 (Pa. Super. 2017) (explaining that when standing issues turn on questions of fact, the court should hear evidence), *aff'd* 193 A.3d 891 (Pa. 2018). Accordingly, the trial court did not

err by deciding the preliminary objections without first holding an evidentiary hearing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/20/2024